IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

ANTWANETTE L. HOWARD, §
§
        Plaintiff, §
§ Civil Action No. 3:17-CV-3224-D
VS. §
§
MEDICREDIT, INC., §
§
        Defendants. §

MEMORANDUM OPINION
AND ORDER

Plaintiff Antwanette L. Howard ("Howard") moves for leave to file a first amended complaint. Defendant Medicredit, Inc. ("Medicredit") opposes the motion. For the reasons that follow, the court grants Howard's motion.

I

Howard filed this lawsuit against Medicredit on November 28, 2017. She alleges that Medicredit—a collection agency specializing in medical and health care debts—placed repeated collection calls to her cell phone, even after she requested that Medicredit stop calling. Howard alleges that this conduct violated the Fair Debt Collection Practices Act ("FDCPA"), under 15 U.S.C. § 1692 *et seq.*, the Telephone Consumer Protection Act, under 47 U.S.C. § 227 *et seq.*, and the Texas Debt Collection Act ("TDCA"), under Tex. Fin. Code Ann. § 392 *et seq.* Medicredit answered Howard's complaint on December 21, 2017. The court later entered a scheduling order setting April 13, 2018 as the deadline to file motions for leave to amend the pleadings.

On January 23, 2018 Howard issued a third-party subpoena to her phone carrier, seeking her phone records. This subpoena set March 7 as the response deadline. As of the conclusion of the briefing on this motion, Howard has yet to receive the subpoenaed phone records from her carrier.

Howard served her first set of written discovery requests on Medicredit on January 26. Medicredit's counsel requested a 14-day extension to respond to these requests. Howard agreed to this extension, setting Medicredit's time to respond as March 12. Medicredit served its responses on March 13. These disclosures included recordings of phone calls between Howard and Medicredit, and covered some of the same phone records as those Howard had requested from her phone carrier.

After reviewing Medicredit's disclosures, on April 19 Howard sent Medicredit a request to meet and confer regarding potential additional claims that Howard had discovered during her review. Medicredit responded to Howard's request on April 26, "at which point it became clear that resolution of the matter would not be feasible at that time." P. Reply 3. Howard then filed her motion for leave to file first amended complaint on May 4. Medicredit opposes the motion.

II

Howard filed the instant motion for leave to amend on May 4, 2018, after the April 13, 2018 deadline for filing motions for leave to amend the pleadings. When, as here, the deadline for seeking leave to amend pleadings has expired, a court considering a motion to

amend must first determine whether to modify the scheduling order under the good cause standard of Fed. R. Civ. P. 16(b)(4). *See S & W Enters., L.L.C. v. South Trust Bank of Ala., N.A.*, 315 F.3d 533, 536 (5th Cir. 2003); *Valcho v. Dall. Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 814 (N.D. Tex. 2009) (Fitzwater, C.J.). To meet the good cause standard, the moving party must show that, despite her diligence, she could not reasonably have met the scheduling order deadline. *See S & W Enters.*, 315 F.3d at 535. Only if the movant first satisfies the requirements of Rule 16(b)(4) must the court next determine whether to grant leave to amend under the more liberal standard of Rule 15(a)(2), which provides that "[t]he court should freely give leave when justice so requires." Rule 15(a)(2); *see S & W Enters.*, 315 F.3d at 536; *Valcho*, 658 F.Supp.2d at 814.

The court assesses four factors when deciding whether to grant an untimely motion for leave to amend under Rule 16(b)(4): "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice." *S & W Enters.*, 315 F.3d at 536 (internal quotation marks and brackets omitted). "The 'good cause' standard focuses on the diligence of the party seeking to modify the scheduling order." *Cut-Heal Animal Care Prods., Inc. v. Agri-Sales Assocs., Inc.*, 2009 WL 305994, at *1 (N.D. Tex. Feb. 9, 2009) (Fitzwater, C.J.). Mere inadvertence on the part of the movant is insufficient to constitute "good cause." Instead, the movant must show that, despite her

diligence, she could not have reasonably met the scheduling deadline. *See Am. Tourmaline Fields v. Int'l Paper Co.*, 1998 WL 874825, at *1 (N.D. Tex. Dec. 7, 1998) (Fitzwater, J.).

III

A

Howard moves to amend in several ways. The amended complaint alleges additional violations of the FDCPA, pursuant to 15 U.S.C. §§ 1692e & e(10), for Medicredit's alleged misrepresentations regarding its ability to have the phone calls cease, as well as §§ 1692e, e(10) & e(11), for Medicredit's failure to identify itself as a debt collector in a subsequent communication with Howard. Howard also seeks to add claims for violations of the TDCA, pursuant to Tex. Fin. Code. Ann. § 392.304(19), for Medicredit's alleged misrepresentations.

Howard maintains there is good cause to grant the leave to amend. She contends that her delay in moving for leave to amend is due to her phone carrier's delay in responding to her subpoena, Medicredit's delay in responding to discovery requests, and her attempts to confer with Medicredit on the additional claims; that the new claims were discovered after reviewing Medicredit's discovery productions; that her amendments are important to the case because they encompass the full extent of Medicredit's liability; that Medicredit will suffer no prejudice from allowing the amendments; and that no discovery or other deadlines will need to be extended.

Medicredit responds that the motion for leave should be denied. It contends that good cause does not exist; that Howard was a party to all events on which she bases the newly

alleged claims, and therefore should have made them part of her complaint; and that she was in possession of the records Medicredit produced for 31 days before the deadline for seeking leave to amend pleadings. As a result, Medicredit contends, Howard should not be allowed to amend her pleadings three weeks late.

B

1

The court turns first to Howard's explanation for failing to timely move for leave to amend.

Howard asserts that her three-week delay in moving for leave resulted from both her phone carrier's failure to respond to her subpoena and Medicredit's extended deadline to respond to her discovery requests. She first explains that Medicredit's extension—while mutually agreed to—"inherently lessened the [time frame] during which Plaintiff would have been able to review Defendant's discovery production." P. Reply 6. Howard further explains that she waited to begin her review of Medicredit's production in the hope that she would soon receive the subpoenaed phone records, "which would have allowed Plaintiff to more meaningfully review the discovery production and more readily identify any perceived deficiencies." P. Reply. 3. She maintains that, once it was not feasible to wait for the subpoena, she reviewed Medicredit's discovery production, discovered the additional violations, and requested a meet and confer with Medicredit. Waiting for Medicredit's response regarding these claims added an additional week to the delay.

The court finds that Howard's explanation favors granting leave to amend. Howard has exercised reasonable diligence in seeking her phone records from her phone carrier, issuing a subpoena before even seeking discovery from Medicredit. Her desire to wait for these phone records before beginning review of Medicredit's production was also reasonable, considering that it would have made this review more efficient and cost-effective for all parties. Moreover, Howard cannot be held responsible for the entirety of the delay, because the parties agreed to extend Medicredit's deadline to turn over its discovery production at Medicredit's request.

Medicredit's arguments that there is no good cause for the delay are unavailing. It first maintains that because Howard was party to each of the conversations on which the new claims are based, she "was well aware of the phone calls prior to the time that she filed suit." D. Resp. 5. Howard's desired amendments, however, are based on the contents of individual calls from among the 15 or more calls that took place between Howard and Medicredit. Due to the number of calls, it is unsurprising and reasonable that Howard would not recall the verbatim contents of each one.

Where courts decline to grant leave to amend due to a lack of diligence, it is usually because the party retained the *records* related to the desired amendment. *See e.g. Lopez v. Reliable Clean-Up & Support Servs., LLC,* 2018 WL 3609271, at *4 (N.D. Tex. July 27, 2018) (Fitzwater J.) (holding that good cause under Rule 16(b)(4) was absent when party had possessed documents relevant to amendments for at least 18 months before moving for

leave); *Shofner v. Shoukfeh*, 2017 WL 3841641, at *2 (N.D. Tex. Apr. 7, 2017) (Cummings, J.) (declining to grant leave to amend under Rule 16(b)(4) where plaintiff "had access to all of [relevant] medical records early in the case, yet waited more than a year after filing suit to first hire expert witnesses to review the records"). Here, Howard received the records on which her new claims are based on March 13, 2018. More important, Howard's actions during the delay—the pursuit of the related subpoena, the review of the records, and the attempt to meet and confer with Medicredt—demonstrate her diligence despite missing the scheduling order deadline. Therefore, the court finds that the first factor favors granting the motion for leave.

2

The second factor considers the importance of the amendment. Howard maintains that the amendments are important because they "ensure[] that Plaintiff's case proceeds on the proper legal theories and further encompasses the full extent of Defendant's potential liability to Plaintiff." P. Reply 7. Medicredit does not address this factor.

The court has previously found other proposed amendments to be important where they "potentially provide additional grounds for [a party] to recover," *Mid-Continent Casualty Co. v. Eland Energy, Inc.*, 2009 WL 3074618, at *37 (N.D. Tex. Mar. 30, 2009) (Fitzwater, C.J.), or "directly affect[] [a party's] prospects of ultimate recovery," *The Richards Group, Inc. v. Brock*, 2008 WL 1722250, at *2 (N.D. Tex. Apr. 14, 2008)

(Fitzwater, C.J.). Because adding these claims affects the potential liability of Medicredit to Howard, the court finds that the amendment is important.

3

The court next considers the third factor: the potential prejudice in allowing the amendment. Howard maintains that Medicredit would suffer no prejudice. She notes that she would need no additional discovery to prosecute the new claims because she identified them through the discovery that has already been completed. Medicredit does not address in its briefing whether the amendment presents any potential prejudice. Therefore, the court finds that this factor weighs in favor of granting the motion for leave.

4

The fourth factor considers the availability of a continuance to cure any prejudice. As stated above, Medicredit would face no prejudice from allowing the amendment. And even if the parties ultimately need additional discovery, over two months remain until the current discovery deadline. As a result, the court finds that this factor strongly weighs in favor of granting Howard's motion.

5

Finally, the court considers the four factors holistically. "It does not mechanically count the number of factors that favor each side. And it remembers at all times that the good cause inquiry focuses on the diligence of the party seeking to modify the scheduling order." *E.E.O.C. v. Serv. Temps, Inc.*, 2009 WL 3294863, at *3 (N.D. Tex. Oct. 13, 2009)

(Fitzwater, C.J.), *aff'd*, 679 F.3d 323 (5th Cir. 2012). Here, Howard has demonstrated her continued diligence in discovering and pursuing her new claims, and all four factors favor granting the motion for leave. Therefore, the court holds that Howard has demonstrated the good cause required for leave to amend under Rule 16(b)(4).

IV

Having found good cause, the court now turns to whether leave should be granted under Rule 15(a).

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend a pleading] when justice so requires." "'It is settled that the grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court.'" *Garcia v. Zale Corp.*, 2006 WL 298156, at *1 (N.D. Tex. Feb. 1, 2006) (Fitzwater, J.) (quoting *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)). Granting leave to amend, however, "is by no means automatic." *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139 (5th Cir. 1993) (citation omitted). In deciding whether to grant leave to amend, the court may consider factors such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment. *Id.* (citing cases).

Medicredit maintains that Howard unduly delayed filing her motion for leave. It contends that, because "Plaintiff knew of all the pertinent facts she alleges in support of her proposed First Amended Complaint, she could have and should have asserted those claims

and allegations in her original Complaint." D. Resp. 10.  This, however, is a reiteration of Medicredit's argument that there is no good cause to amend under Rule 16(b)(4).  As explained *supra* in § III(B)(1), the fact that Howard did not remember the precise content of each of her many phone calls with Medicredit until reviewing Medicredit's disclosures does not indicate a lack of good cause.  Similarly, it does not indicate undue delay, because undue delay "must prejudice the nonmoving party or impose unwarranted burdens on the court."  *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 427 (5th Cir. 2004). Medicredit has not pointed to any such prejudice or burdens.  Therefore, the court finds that there is no undue delay.

Medicredit also contends that the amendments would be futile.  But as this court has frequently noted,

> the court's almost unvarying practice when futility is raised is to address the merits of the claim or defense in the context of a Rule 12(b)(6) or Rule 56 motion.  The court only infrequently considers the merits of new causes of action in the context of Rule 15(a).  The court prefers instead to do so in the context of a Rule 12(b)(6) or Rule 56 motion, where the procedural safeguards are surer.

*Architettura, Inc. v. DSGN Assocs. Inc.*, 2017 WL 3311197, at *5 (N.D. Tex. Aug. 3, 2017) (Fitzwater, J.) (quoting *Garcia*, 2006 WL 298156, at *1-2).  Accordingly, the court holds that Howard has met the requirements of Rule 15(a) and grants Howard's motion for leave to file first amended complaint.

* * *

For the reasons explained, the court grants Howard's motion for leave to file first amended complaint and directs the clerk of court to file Howard's first amended complaint today.

**SO ORDERED**.

August 8, 2018.

_____
SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE